# THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:11cv72

| | | |
|---|---|---|
| **FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver FOR THE BANK OF ASHEVILLE,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | <u>**MEMORANDUM OF**</u> |
| **vs.** | ) ) | <u>**DECISION AND ORDER**</u> |
| **AVERY T. CASHION, III,** | ) ) | |
| **Defendant.** | ) ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary

Judgment [Doc. 10]; the Plaintiff's Motion to Strike or Disregard Defendant's

Surreply and Affidavit of Raymond M. Chapman [Doc. 27]; and the

Defendant's Motion to File Surreply [Doc. 30].

## I.    PROCEDURAL BACKGROUND

This is an action to recover funds owed pursuant to a promissory note

("Note") executed by the Defendant Avery T. Cashion, III ("Defendant") in

favor of The Bank of Asheville ("TBOA").  On September 14, 2010, TBOA filed

a Complaint in the Buncombe County General Court of Justice, Superior Court

Division, alleging that the Defendant had failed to make the required loan

payments and was therefore in default.  [Complaint, Doc. 1-2].  TBOA sought

to collect the remaining amounts due under the Note, plus interest, as well as an award of attorneys' fees. [Id. at ¶¶6, 9]. On November 22, 2010, the Defendant filed his Answer, denying liability. [Answer, Doc. 1-4].

On January 21, 2011, TBOA was closed and placed in the hands of the North Carolina Commissioner of Banks. The North Carolina Commissioner of Banks appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for TBOA. [Notice of Appointment of Receiver, Doc. 1-5 at 3]. The FDIC accepted the appointment as receiver on January 21, 2011. [Letter of Acceptance, Doc. 1-5 at 4]. On March 21, 2011, the Superior Court entered an Order substituting the FDIC, as receiver for TBOA, as the plaintiff in the action. [Superior Court Order, Doc. 1-7]. On April 4, 2011, the FDIC removed the action to this Court pursuant to 12 U.S.C. § 1819(b)(2)(B). [Notice of Removal, Doc. 1].

The FDIC filed its Motion for Summary Judgment on December 1, 2011. [Doc. 10]. After receiving two extensions of time, the Defendant filed a Response to the FDIC's Motion on January 10, 2012. [Doc. 21]. After receiving an extension of time to do so, the FDIC filed a Reply brief with supporting exhibits on February 3, 2012. [Doc. 23].

On February 15, 2012, the Defendant filed a "Notice of Filing in Response to Motion for Summary Judgment" along with an Affidavit of Raymond M. Chapman. [Docs. 24, 25]. On February 23, 2012, the FDIC filed a motion to strike both of these pleadings as improperly and untimely filed. [Doc. 27]. After receiving an extension of time to do so, the Defendant filed a Response to the Motion to Strike on March 26, 2012. [Doc. 31]. On that date, the Defendant also filed a Motion seeking leave to file his "Notice of Filing in Response to Motion for Summary Judgment" as a surreply brief in support of his opposition to the Plaintiff's Motion for Summary Judgment. [Doc. 30].

Having been fully briefed, these matters are ripe for disposition.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News and Observer Pub. Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a

verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." <u>Bouchat v. Baltimore Ravens Football Club, Inc.</u>, 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the non-moving party who must convince the Court that a triable issue does exist. <u>Id.</u>

> A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial. Furthermore, neither unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment; rather, if the adverse party fails to bring forth facts showing that reasonable minds could differ on a material point, then, regardless of any proof or evidentiary requirements imposed by the substantive law, summary judgment, if appropriate, shall be entered.

<u>Id</u>. (internal citations and quotation marks omitted).

4

In considering the facts for the purposes of a summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and must draw all reasonable inferences in the nonmoving party's favor.  <u>Adams v. Trustees of the Univ. of N.C.-Wilmington</u>, 640 F.3d 550, 556 (4th Cir. 2011).

## III.    FACTUAL BACKGROUND

On or about August 21, 2006, the Defendant executed a promissory note ("Note") in the principal amount of $2,000,000 to TBOA.  [Complaint, Doc. 1-2 at ¶4; Answer, Doc. 1-4 at ¶4].[1]  The alleged debt that is the subject of this lawsuit bore an account number of 4436.  [Affidavit of Avery T. Cashion, III ("Cashion Aff."), Doc. 20 at ¶3].

The Note was secured by the pledge of a security interest in three promissory notes: (1) a first promissory note, dated August 1, 2005, in the amount of $2,000,000 from a company known as Power Development, LLC to NC Four C's, LLC, of which the Defendant is a member-manager; (2) a second promissory note dated October 1, 2005, in the amount of $2,000,000 from Power Development, LLC to NC Four C's, LLC; and (3) a third

---

[1]The allegations of the Complaint are verified as being true by Sherry M. Martin, who is employed by the FDIC as a Resolutions and Receiverships Specialist.  [<u>See</u> Verification, Doc. 11-1].

promissory note dated October 7, 2005, in the amount of $1,000,000 from Power Development, LLC to NC Four C's, LLC. [See Note, Doc. 1-2 at 4; Cashion Aff., Doc. 20 at ¶14]. In 2007, these promissory notes were assigned to the Defendant in his personal capacity. [Cashion Aff., Doc. 20 at ¶16]. At no time prior to the institution of this action in September 2010 did TBOA attempt to realize on the value of this collateral. [Id. at ¶19].

In support of its Motion, the FDIC offers the Supplemental Affidavit of Sherry M. Martin, a Resolution and Receiverships Specialist employed by the FDIC. Ms. Martin states that she is familiar with the books and records acquired by the FDIC when it was appointed receiver for TBOA, and that her Affidavit is based on her personal knowledge acquired from her review of those books and records, as well as other documents filed in the case. [Supplemental Affidavit of Sherry M. Martin ("Martin Supp. Aff."), Doc. 23-1 at ¶2]. Ms. Martin states that the FDIC currently has possession of the Note, and that it has not been endorsed, transferred, or assigned to a third party. [Id. at ¶¶3, 4]. Ms. Martin further states that the Note has not been paid by the Defendant or any other third party on the Defendant's behalf, and remains on the books of TBOA as an accounts receivable. [Id. at ¶5].

## IV. DISCUSSION

### A. Plaintiff's Motion to Strike

As a preliminary matter, the FDIC moves to strike the "Notice of Filing" and the Affidavit of Raymond M. Chapman, which were filed by the Defendant in response to the FDIC's Reply, arguing that such pleadings are improper and therefore should be stricken or at least disregarded by the Court in ruling on the FDIC's Motion for Summary Judgment. [Doc. 27].

In his "Notice of Filing," the Defendant seeks to rebut certain arguments and factual assertions made in the FDIC's Reply brief and supporting exhibits. Although styled a "Notice of Filing," the pleading filed as Document No. 24 is therefore actually a surreply brief. Nothing in the Court's Pretrial Order and Case Management Plan authorizes the filing of a surreply brief. [See Pretrial Order and Case Management Plan, Doc. 4 at 5-6 (discussing responses to motions)]. Further, surreplies are not allowed by the Local Civil Rules. See Miller v. Ingles, No. 1:09cv200, 2009 WL 4325218, at *16 (W.D.N.C. Nov. 24, 2009) (Howell, M.J.); see also LCvR 7.1(E) (discussing time frames for filing responses and replies with no reference to surreplies). Thus, the Defendant's surreply brief could have been filed only with leave of Court. See Miller, 2009 WL 4325218, at *16. The Defendant, however, did not seek leave of Court

before filing his surreply brief. As such, his brief and any documents filed in support thereof are subject to being stricken from the record as improperly filed.

Apparently realizing his error, the Defendant now seeks leave to file his "Notice of Filing" as a surreply brief in support of his opposition to the Plaintiff's Motion for Summary Judgment. The Defendant's request for leave, however, comes 52 days after the Plaintiff's Reply Brief was filed. As such, the Defendant's Motion is untimely and could be denied on this basis alone. Even disregarding the untimeliness of the Motion, however, the Court would not allow the requested relief. "Generally, courts allow a party to file a surreply only when fairness dictates based on new arguments raised in the previous reply." DiPaulo v. Potter, 733 F.Supp.2d 666, 670 (M.D.N.C. 2010). Here, the Defendant contends that the FDIC's Reply "raised new allegations and arguments in support of its motion for summary judgment." [Doc. 24 at 2]. The Defendant's characterization of the FDIC's arguments, however, is inaccurate. The so-called "new arguments" cited by the Defendant are actually responses by the FDIC to the issues concerning the IRS Forms 1099-C raised in the Defendant's Response. They therefore constitute appropriate rebuttal arguments, not "new" matters raised for the first time in the Reply.

The Defendant had ample opportunity to present all of his arguments and evidence regarding the Forms 1099-C in his Response to the FDIC's Motion for Summary Judgment. The Defendant has made no argument or showing that the information contained in his surreply or in the Chapman Affidavit regarding the Forms 1099-C was not available to him at the time he originally responded to FDIC's Motion for Summary Judgment. For these reasons, the Court concludes that the Defendant's proposed surreply is unwarranted.

In addition, Chapman's affidavit is improper because of its content. The operative portions of the affidavit set forth Mr. Chapman's interpretations of certain documents that he attaches thereto. He refers to these documents as "IRS transcripts" but does not offer any authentication or any evidence that would allow for the admission of such hearsay. He also offers nothing on which the Court could receive Mr. Chapman's interpretations and conclusions regarding these documents as admissible expert opinions. In short, even if the Chapman affidavit had been timely and properly filed, it would not serve to benefit the Defendant.

Accordingly, the FDIC's Motion to Strike or Disregard Defendant's Surreply and Affidavit of Raymond M. Chapman [Doc. 27] is granted, and

these pleadings [Docs. 24, 25] shall be stricken from the record. The Defendant's Motion to File Surreply [Doc. 30] is denied.

## B. Plaintiff's Motion for Summary Judgment

The Defendant does not dispute that he has not paid the debt that he owes under the Note. Nevertheless, he argues that the Court should deny the FDIC's Motion for Summary Judgment, and even enter summary judgment in his favor, because the FDIC has not produced the original Note and therefore has not shown itself to be the owner and holder of the Note. The Defendant further contends that the FDIC cannot establish itself as the holder of the Note because there is evidence that TBOA cancelled and/or assigned the Note prior to the FDIC having taken over as receiver. Finally, the Defendant argues that the FDIC is not entitled to judgment as a matter of law because TBOA failed to mitigate its damages by pursuing the collateral pledged in support of the Note. The Court will address each of these arguments in turn.

### 1. Production of Original Note

The Defendant contends that "[t]he summary judgment inquiry here turns on whether the FDIC has shown it is the holder of an undischarged and unassigned promissory note from [the Defendant] made payable to the order of [TBOA]." [Doc. 21 at 7]. While not disputing that the FDIC "succeeded

generally to the rights of [The] Bank of Asheville through the receivership process," the Defendant contends that the FDIC has not shown holder status because it has not produced the original Note. [Id. at 21]. The Defendant argues that he made a "strict demand" for production of the original Note in his Answer, but that neither TBOA nor the FDIC has ever produced the original Note. [Id. at 3]. The Defendant argues that the Plaintiff's failure to produce the original Note "on demand" therefore precludes summary judgment being entered in the Plaintiff's favor.[2]

Contrary to the Defendant's argument, however, production of the original Note is not the only manner in which holder status can be proved. See Dobson v. Substitute Trustee Servs., Inc., ___ N.C. App. ___, 711 S.E.2d 728, 730 (N.C. Ct. App.) ("[Plaintiff] argues on appeal . . . that Wells Fargo has not proven that it is the holder of the note because it failed to produce the original note. This argument is unavailing."), aff'd, 365 N.C. 304, 716 S.E.2d 849 (2011); Liles v. Myers, 38 N.C. App. 525, 528, 248 S.E.2d 385, 388 (1978) (affirming denial of summary judgment where record "fail[ed] to reveal

---

[2]Notably, the Defendant never made a formal discovery request for the production of the Original Note. [See Defendant's Discovery Requests, Doc. 23-2].

that the note itself *or any other competent evidence* was introduced to show that the plaintiff was the holder of the note") (emphasis added).[3]

In support of his argument that production of the original Note is required to establish the FDIC as the holder, the Defendant cites <u>Liles v. Myers</u>, 38 N.C. App. 525, 248 S.E.2d 385 (1978). The Defendant's reliance on <u>Liles</u>, however, is misplaced. In <u>Liles</u>, the plaintiff alleged that the defendant had executed a promissory note in plaintiff's favor as payment for equipment. <u>Id.</u> at 525, 248 S.E.2d at 386. The plaintiff failed to allege, however, that she was the current owner and holder of the note in the complaint. The affidavit submitted by the plaintiff in support of her motion for summary judgment essentially restated the allegations of the complaint and thus provided no evidence as to her status as the holder of the note. <u>Id.</u> at 526, 248 S.E.2d at 286. Based on this forecast of evidence, the North Carolina Court of Appeals concluded that the plaintiff had not offered any

---

[3]The Note states that it is to be "governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of North Carolina without regard to its conflicts of law provisions." [Note, Doc. 1-2 at 2]. Generally, suits involving the FDIC are governed by federal law. 12 U.S.C. § 1819(b)(2)(A). Absent a showing of a conflict between state law and federal law, however, "a court may adopt state law in interpreting an agreement affecting [the] FDIC's rights." <u>FDIC v. Prince George Corp.</u>, 58 F.3d 1041, 1045 (4th Cir. 1995). Here, the parties have not identified any conflict between North Carolina law and federal law as applied to this case, and they are in agreement that North Carolina law should be applied to the FDIC's claims. [<u>See</u> Doc. 11 at 5; Doc. 21 at 6, 8].

proof that she was the current owner and holder of the note and therefore affirmed the denial of summary judgment.  Id. at 526-27, 248 S.E.2d at 386.

By contrast, the Plaintiff in the instant case has presented a forecast of evidence to establish that it is the current holder and owner of the Note.  In the Complaint, TBOA alleged that it was the "owner and holder of the Note," [Complaint, Doc. 1-2 at ¶8], and this allegation was later verified by the affidavit of Sherry M. Martin [Doc. 11-1].  The Plaintiff further has presented a forecast of evidence, which is uncontested by the Defendant, that the FDIC was appointed as receiver for TBOA in January 2011.  [Notice of Appointment of Receiver, Doc. 1-5 at 3; Letter of Acceptance, Doc. 1-5 at 4].  Having been appointed as receiver for TBOA, the FDIC "succeed[ed] to ... all rights, titles, powers, and privileges" of TBOA, see 12 U.S.C. § 1821(d)(2)(A)(i), including TBOA's right to "collect all obligations and money due the institution," see 12 U.S.C. § 1821(d)(2)(B)(ii).

Additionally, the FDIC's records custodian has submitted an affidavit stating that she has reviewed TBOA's records and has verified that the FDIC is currently in possession of the Note and that the Note has not been negotiated, assigned, or transferred to any other party.  [Martin Supp. Aff., Doc. 23-1 at ¶6].  Liles, therefore, is inapplicable to the present case.

The Defendant's extensive reliance on Econo-Travel Motor Hotel Corporation v. Taylor, 301 N.C. 200, 271 S.E.2d 54 (1980), is also misplaced. In that case, the defendant failed to present any evidence of its merger with the named party on the note. Id. at 204-05, 271 S.E.2d at 58. Here, by contrast, evidence of the FDIC's appointment as receiver establishes that the FDIC succeeded by operation of law to the rights of TBOA. Such evidence is competent to show that the FDIC is the holder of the Note. See In re Foreclosure of N.C. Deed of Trust by Carver Pond I Ltd. P'ship, 719 S.E.2d 207, 210-11 (N.C. Ct. App. 2011) (holding that evidence of merger is competent to prove bank as holder of loan instrument).

In the present case, the FDIC has filed as a part of its forecast of evidence a copy of the Note, the accuracy of which is not contested. It shows on its face that it is payable to TBOA. The Plaintiff further has established that it has succeeded to TBOA's rights by operation of law; that it is in current possession of the Note; and that the Note has not been negotiated, assigned, or transferred to any other party. The Defendant has offered no forecast of evidence to show any of these to be at issue. The Court therefore concludes that the FDIC has established its status as current owner and holder of the Note as a matter of law. See Wells Fargo, Nat'l Ass'n v. Small, No. 10-0578-

CB, 2011 WL 2940971, at *6 (S.D. Ala. July 21, 2011). Based on the foregoing, the Court rejects the Defendant's argument that the FDIC's failure to produce the original Note precludes entry of summary judgment in this case.

## 2. Assignment and/or Cancellation of Debt

The Defendant next contends that summary judgment in favor of the FDIC is inappropriate because there is a genuine dispute as to whether the Note was cancelled and/or assigned by TBOA. In support of this argument, the Defendant submits a photocopy of two Internal Revenue Service Forms 1099-C, which he contends evidences TBOA's cancellation of the debt at issue. Both Forms 1099-C are dated June 23, 2010 and identify TBOA as the "creditor" and the Defendant as the "debtor." The first Form 1099-C references account number 4436. In the box marked "Debt description" on this Form, it states "Assignment of Promissory Notes" and indicates the amount of canceled debt to be $1,993,222.20. [Cashion Aff. Ex. A, Doc. 20-1 at 2]. The second Form 1099-C references account number 5264 and indicates a cancellation of "Assignment of Promissory Notes" in the amount of $500,000. [Id.]. While both Forms are dated June 23, 2010, the Defendant asserts that he did not receive these forms until "early 2011." [Cashion Aff.,

Doc. 20 at ¶3.  The Defendant does not specify the exact date he received these forms, the manner in which he received them, or from whom they were received.  [See id.].

The Defendant contends that these Forms 1099-C create an issue of material fact as to whether the Note was either cancelled or assigned.  To create a genuine factual dispute, however, such evidence must be in an admissible form.  See Fed. R. Civ. P. 56(c).  Here, the Defendant has not established a foundation for the admission of this evidence.  These Forms are being offered for the truth of the matter asserted and therefore constitute hearsay.  While it is possible that these Forms could be admissible under the business record exception to the hearsay rule (Fed. R. Evid. 803(6)), the Defendant has failed to authenticate them for this purpose.[4]

Even if these Forms were admissible evidence, however, they do not raise a genuine dispute of fact for purposes of the FDIC's summary judgment motion.  First, only one of these Forms even appears to relate to the loan at issue.  The first Form 1099-C references account number 4436, which is the

---

[4]In her Supplemental Affidavit, the FDIC records custodian, Sherry M. Martin, acknowledges that, based on her review of TBOA's books and records currently in the FDIC's possession, "these forms appear to have been sent to [the Defendant] by The Bank of Asheville prior to the Plaintiff's appointment as Receiver for The Bank of Asheville."  [Martin Supp. Aff., Doc. 23-1 at ¶7].  Ms. Martin's statements, however, do not establish these forms as records of a regularly conducted activity for the purposes of Fed. R. Evid. 803(6) or Fed. R. Evid. 902(11).

account number of the Defendant's loan secured by the Note.  The second Form 1099-C, however, references an entirely different account number and thus appears to have no relation to the Note at issue.

Second, the Form 1099-C that references account number 4436 describes the debt subject to cancellation not as the Defendant's Note, but rather the "Assignment of Promissory Notes."  [Doc. 20-1 at 2].  This Form 1099-C thus appears to relate not to the assignment or cancellation of the Defendant's *Note* but rather to the assignment or cancellation of the Note's *collateral*, which consisted of several promissory notes that were assigned to the Defendant by various entities in which he held an interest.

In any event, a Form 1099-C does not itself operate to legally discharge a debtor's liability.  <u>See</u> <u>Owens v. Comm'r</u>, No. 02-61057, 2003 WL 21196200, at *3 (5th Cir. May 15, 2003) (per curiam) (holding that IRS was not substantially justified in relying on a Form 1099-C in issuing deficiency notice to taxpayer because the record was "devoid of evidence that the [ ] loan was ever actually canceled," and the Form 1099-C "supports no conclusion other than an *intention* to cancel the loan rather than its actual cancellation"); <u>Bononi v. Bayer Employees Fed. Credit Union</u> (<u>In re Zilka</u>), 407 B.R. 684, 689 (Bankr. W.D. Pa. 2009) (concluding that issuance of Form 1099-C does not

constitute admission of a discharge of the debtor's liability); <u>Leonard v. Old Nat'l Bank Corp.</u>, 837 N.E.2d 543, 545 (Ind. Ct. App. 2005) (concluding that because Form 1099-C is merely an informational filing with IRS, it does not operate to cancel debt itself).  A Form 1099-C is issued to comply with IRS reporting requirements.  <u>See</u> I.R.S. Ltr. Rul. 2005-0207, 2005 WL 3561135 (Dec. 30, 2005).  The IRS itself does not view a Form 1099-C as an admission that the creditor has discharged the debt and can no longer pursue collection thereon.  <u>See</u> <u>id.</u>; <u>In re Zilka</u>, 407 B.R. at 688.  As such, the fact that the TBOA may have issued a Form 1099-C in relation to the Defendant's indebtedness does not, standing alone, raise a genuine issue of material fact regarding the Defendant's liability on the Note.  <u>See</u> <u>Capital One, N.A. v. Massey</u>, No. 4:10-CV-01707, 2011 WL 3299934, at *3 (S.D. Tex. Aug. 1, 2011) (concluding that proof of Form 1099-C does not create genuine issue of fact regarding cancellation of debtor's liability).

To avoid summary judgment, the Defendant must raise a "genuine" factual dispute concerning whether TBOA cancelled the loan prior to the FDIC being appointed as Receiver.  A dispute is not genuine, however, "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted." <u>Anderson</u>, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). The Defendant's forecast of evidence consisting of not more than an unauthenticated Form 1099-C (i.e. "IRS Transcript") that refers to an "Assignment of Promissory Notes" is not sufficient evidence for a jury to return a verdict in his favor on the issue of whether the Note at issue had been cancelled and/or assigned by TBOA prior to the institution of this action. Accordingly, the Defendant's argument on this point is rejected.

### 3. Failure to Mitigate Damages

The Defendant next asserts that the Plaintiff failed to mitigate its damages by not pursuing the collateral pledged in support of the Note. [Answer, Doc. 1-4 at 3; Doc. 21 at 22].

The Defendant is incorrect that the TBOA was required to first seek recourse against the collateral before suing under the Note. Specifically, the Note provides, in pertinent part, as follows:

> LENDER'S RIGHTS. Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.
>
> *    *    *

> GENERAL PROVISIONS: .... All ... parties [who sign this Note] agree that Lender may ... fail to realize upon ... Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice of anyone.

[Note, Doc. 1-2 at 3, 4]. As the Note does not require the Plaintiff to seek recovery from the collateral first, the Defendant's affirmative defense based on a theory of a failure to mitigate damages is without merit.

### 4. Attorneys' Fees

In addition to the recovery of the outstanding indebtedness, the Plaintiff also seeks to recover its reasonable attorneys' fees incurred in enforcing the Note. [Complaint, Doc. 1-2 at ¶9]. Under North Carolina law, a party generally cannot recover attorneys' fees "unless such a recovery is expressly authorized by statute." Stillwell Enters., Inc. v. Interstate Equip. Co., 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980). Section 6-21.2 of the North Carolina General Statutes allows for an award of attorneys' fees in actions to enforce obligations owed under a promissory note that itself provides for the payment of attorneys' fees. That section provides, in pertinent part, as follows:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness, in addition to the legal rate of interest or finance charges specified therein, shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of

> indebtedness be collected by or through any attorney
> at law after maturity....

N.C. Gen. Stat. § 6-21.2.

Section 6-21.2 further requires a creditor to notify all parties sought to be held on the obligation that the creditor will seek to enforce the attorneys' fees provision contained in the note and that if the party pays the outstanding balance within five days from the mailing of such notice, then the attorneys' fee obligation shall be void.  N.C. Gen. Stat. § 6-21.2(5).  "The statutory use of 'shall' renders the provision requiring notice mandatory."  Blanton v. Sisk, 70 N.C. App. 70, 74, 318 S.E.2d 560, 564 (1984), *impliedly overruled on other grounds as stated in* Paynter v. Maggiolo, 105 N.C. App. 312, 314-15, 412 S.E.2d 691, 693 (1992).

The Plaintiff has offered no forecast of evidence to establish that this statutory provision was complied with prior to filing suit.  It is well-established that the service of a complaint seeking to recover attorneys' fees is not sufficient to satisfy the notice requirement of N.C. Gen. Stat. §6-21.2(5).  Blanton, 70 N.C. App. at 74, 318 S.E.2d at 564; Brooks Millwork Co. v. Levine, No. COA09-781, 2010 WL 2366541, at *2 (N.C. Ct. App. June 15, 2010).  Having failed to satisfy the notice requirement of N.C. Gen. Stat. 6-21.2, the

Court concludes that the Plaintiff is not entitled to recover its attorneys' fees in this action.

## V.     CONCLUSION

In sum, the Court concludes that the FDIC has presented a forecast of evidence demonstrating that it is entitled to judgment as a matter of law on its claim to recover the outstanding indebtedness owing under the Note.  The Defendant has not presented a forecast of evidence to create a genuine dispute as to any material fact regarding his liability under the Note and therefore summary judgment in favor of the FDIC is appropriate on this claim. Because the Plaintiff failed to satisfy the notice requirement of N.C. Gen. Stat. 6-21.2, the Plaintiff's request for an award of attorneys' fees is denied.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion to Strike or Disregard Defendant's Surreply and Affidavit of Raymond M. Chapman  [Doc. 27] is **GRANTED**, and the Defendant's Surreply and the Affidavit of Raymond M. Chapman are hereby **STRICKEN**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED IN PART** to the extent that the Plaintiff is

hereby awarded against the Defendant Avery T. Cashion, III the sum of $2,111,427.12, together with interest at the rate of $373.73 per day from and after September 2, 2010.  The Plaintiff's Motion [Doc. 10] is **DENIED IN PART** with respect to the Plaintiff's claim for an award of attorneys' fees.

IT **IS FURTHER ORDERED** that the Defendant's Motion to File Surreply [Doc. 30] is **DENIED**.

A Judgment consistent with this Memorandum and Decision and Order shall be entered contemporaneously herewith.

Signed: April 2, 2012

Martin Reidinger
United States District Judge